

**SO ORDERED.**

**SIGNED this 08 day of March, 2011.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NUMBER: |
| GARON LEE REEVES and
DIANE LINDSEY REEVES, | 10-02562-8-SWH |
| DEBTORS | CHAPTER 7 |

**ORDER GRANTING AUTHORITY TO CONDUCT
SALE AND APPROVING CARVE OUT**

The matter before the court is the trustee's motion for authority to conduct a sale of real property free and clear of liens and to approve a carve out for administrative costs and unsecured claims. A hearing was held on December 22, 2010. The matter was taken under advisement by the court, and at the conclusion of the hearing, counsel were invited to file supplemental memoranda of law. Memoranda were timely filed on behalf of the trustee, the debtor, and the Internal Revenue Service ("IRS").

The debtors filed a joint chapter 7 petition on March 31, 2010, and Joseph N. Callaway was appointed trustee. The debtors listed certain real property located at 1425 Chelton Oaks Place, Raleigh, North Carolina, on their schedule A, with a stated value as of the petition date of $300,000 (the "Property"). The Property is subject to a consensual first mortgage in favor of Wells Fargo

Mortgage in the amount of $195,516; a tax lien in favor of the IRS in the amount of $367,998.60; a tax lien in favor of the North Carolina Department of Revenue in the amount of $50,000; and 2010 Wake County and City of Raleigh ad valorem taxes in an amount less than $10,000. On their original schedule C, the debtors claimed exemptions pursuant to N.C. Gen. Stat. § 1C-1601(a)(1) and (2) in the Property in the amount of $104,484. On May 7, 2010, the debtors amended schedule C to claim exemptions of $60,000 in the Property under those same provisions.[1] On May 19, 2010, the trustee objected to the debtors' exemptions in the Property on the basis that there is no equity in the Property. In that objection, the trustee also foreshadowed his intention to sell the Property to obtain net sale proceeds and to apply the proceeds to the IRS lien.

On June 14, 2010, the debtors filed a response to the trustee's objection to their exemptions, stating that they had a right to exempt the Property notwithstanding their lack of equity in it. On July 23, 2010, the court denied the trustee's objection to the exemption claimed by the debtors but specifically preserved the trustee's right to seek authority to sell the Property in order to generate funds for a recovery to unsecured creditors "upon a carve out by the IRS or some other method," as well as the debtors' rights to object to such a sale.

On October 21, 2010, the trustee filed a motion for authority to conduct a sale of the Property free and clear of liens and for the court's approval of a carve out for the benefit of administrative costs and unsecured claims in the case. The IRS has agreed to carve out 30% of the net proceeds of the sale of the Property otherwise subject to the IRS lien for the payment of allowed

---

[1] Debtors explain that they "set the value of their claim of exemption at $60,000.00, because of the propensity of chapter 7 trustee to assert that if a debtor lists a value at zero, the debtor has claimed no exemption." Debtor's Response to Objection to Exemptions Docket No. 19.

2

administrative claims, with a balance to be paid on a pro rata basis to unsecured creditors. The debtors filed an objection to the motion on November 15, 2010.

The trustee contends that he is entitled to sell the Property and distribute the proceeds pursuant to § 724(b) of the Bankruptcy Code (the "Code") and that the debtors' claimed exemptions will neither prevent the sale, in light of § 522(c)(2)(B), nor prohibit the IRS from allocating a portion of its distribution to the unsecured creditors as set out in § 724(b).[2] The debtors contend that since the Property has been exempted from the estate, the trustee has no authority to sell it, even if such sale will yield funds for the payment of administrative or unsecured claims. Furthermore, the debtors contend, allowing the trustee to sell the debtors' residence absent approval from the district court would violate 26 U.S.C. § 6334(a)(13).

## DISCUSSION

The debtors argue that the trustee is barred from selling the Property because, based upon the court's allowance of the debtors' exemptions in the Property, it is not property of the estate. The court disagrees with the debtors' conclusion. All property of the debtors became property of the estate at the time of the filing of the petition in this case. After the property came into the estate, the debtors were entitled to exempt it under § 522 of the Code, which invoked the exemptions objections procedure followed by the trustee. See Tignor v. Parkinson, 729 F.2d 977 (4th Cir. 1984); Shirkey v. Leake, 715 F.2d 859, 863 (4th Cir. 1983). In this case, the debtors' claimed exemptions in the

---

[2] The trustee relies upon In re Laredo, 334 B.R. 401 (Bankr. N.D. Ill. 2005) for his position. The court finds that case to be instructional, but not dispositive. In that case there was equity in the property above the tax lien, the debtor had not objected to the sale, and merely contested distribution of the proceeds.

3

Property were upheld by the court, notwithstanding the fact that there was indisputably no equity in the Property.  See In re McQueen, 196 B.R. 31 (E.D.N.C. 1995); In re Thennes, Case No. 03-04271-5-ATS (Bankr. E.D.N.C. Oct. 7, 2004).   However, the effect of allowance of the debtors' exemptions in the Property was to exempt their *interest* in the Property from the estate, not the Property itself.  Schwab v. Reilly, 130 S. Ct. 2652 (2010).

Section 704(a)(1) of the Code charges the chapter 7 trustee with the duty to sell property of the estate.  When a trustee liquidates property of the estate, he must recognize and address the interests of secured creditors holding liens, co-owners with joint interests and the debtor itself, including the debtor's ability to claim exemptions.  Absent specific statutory direction to the contrary, the trustee must distribute the proceeds from the sale of estate property to satisfy the interests of third parties before any such proceeds inure to the benefit of the estate.  Section 724(b), though, does give that direction to the contrary, and specifies how the proceeds of property of the estate subject to an unavoidable tax lien shall be distributed.  In essence, the proceeds of the sale of such property are to be distributed first to lienholders senior to the tax lien, then to the holders of certain allowed chapter 7 administrative claims up to the amount of the secured tax lien, then to the

tax lien claimant and, ultimately, to the estate.[3] Section 724(b) "provides a rule by which a secured tax claimant's right to distribution of property of the estate is subordinated, up to the amount of the lien, to the rights of holders of claims entitled to priority under § 507(a)(1)-(7)." In re Laredo, 334 B.R. 401, 411 (Bankr. N.D. Ill. 2005). Since the administrative claimants are only allowed to step into the shoes of the tax creditor to the extent of the tax lien, the only parties affected by the operation of § 724(b) are the priority claimants and the tax lien creditor. In re Bino's Inc., 182 B.R. 784, 787 (Bankr. N.D. Ill. 1995). The trustee confirmed at the hearing that all proceeds of the sale of the Property would be applied in reduction of the IRS claim notwithstanding the agreed carve out, so the debtors will receive full credit for the sale.

In this case, because the Property is property of the estate, the trustee is authorized to sell it and distribute the proceeds in accordance with § 724(b). The fact that property is fully secured does not exclude that property from the estate, or prevent a trustee from liquidating it. In practice, trustees in this district frequently liquidate fully secured property for the benefit of the secured creditor where the trustee is authorized to recover his costs of disposal from the property pursuant

---

[3] Section 724(b) provides as follows:

    (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title (other than to the extent that there is a properly perfected unavoidable tax lien arising in connection with an ad valorem tax on real or personal property of the estate) and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed -
        (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
        (2) second, to any holder of a claim of a kind specified in section 507(a)(1)(C) or 507(a)(2) (except that such expenses under each such section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
        (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
        . . .
        (6) sixth, to the estate.

to § 506(c). Section 724(b) provides the trustee specific authority to sell the Property in light of the existence of the IRS lax lien, and direction as to the distribution of the proceeds.

Next, the debtors argue that even if the trustee has the right to sell the Property, their exemptions should be paid before all claims except the claims of Wells Fargo and the Wake County Tax Collector. That payment scheme is, however, simply contradictory to the plain language of both § 724(b) and § 522(c). The debtors do not dispute that their exemption in the Property does not preempt enforcement of the IRS claim and that § 522(c)(2)(b)[4] operates to give the IRS "rights in the Property superior to the debtors' exemption rights." Debtors' Response to Objection to Exemption No. 19. Section 724 simply recognizes the exemption enforcement exclusion for tax liens and allows the estate to take advantage of the "niche" created by that lien to pay administrative claims of the estate through the sale of property subject to an unavoidable tax lien. In re K.C. Mach. & Tool Co., 816 F.2d 238 (6th Cir. 1987). In the instant case, the IRS has further agreed to forego a portion of the proceeds properly payable to it under the statute, for the benefit of the estate for any amount that administrative expenses are less than $30,000. The concept of gifting a portion of a distribution priority has been upheld in the chapter 7 context. In re SPM Mfg. Corp., 984 F.2d

---

[4] Section 522(c)(1) and (2) of the Code provides, in pertinent part, as follows:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
    (1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);
    (2) a debt secured by a lien that is—
    (A) (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
        (ii) not void under section 506(d) of this title; or
    (B) *a tax lien, notice of which is properly filed*;

11 U.S.C. § 522 (c) (2000) (emphasis added).

1305 (1st Cir. 1993).[5] The key point is this: the carve out for the benefit of unsecured creditors is a carve out from the lien held by the IRS, not from a creditor who would be subject to the debtor's exemption. See In re World Health Alts., Inc., 344 B.R. 291, 297 (Bankr. D. Del. 2006). Put another way, whatever interest in the Property the debtors may have is not being "trumped" by a creditor who would otherwise be subject to the debtor's exemptions.

Additionally, debtors contend that the trustee's proposed sale of the Property violates 26 U.S.C. § 6334(a)(13). However, that section restricts the IRS from levy and sale, not the trustee. The trustee is given explicit authority to sell property subject to a tax lien in § 724(b) without additional district court approval.

Finally, the debtors rely on a line of cases which have held that the trustee is prohibited from selling property in which valid exemptions exist in order to satisfy domestic support obligations ("DSO"). The debtors argue that domestic support obligations enjoy an exclusion from the effects of exemption similar to the exclusion applicable to a tax lienor under § 522 and thus a similar prohibition against sale should follow. This argument also must fail because there is no provision in the code comparable to § 724(b) that grants the trustee specific authority to sell and designate a distribution priority for the proceeds of property subject to a DSO claim. Those cases are, therefore, distinguishable.[6]

---

[5] In a very recent case, In re DBSD North America, Inc., ____ F.3d ____, 2011 WL 350480 (2nd Cir. 2011), the Second Circuit abrogated certain gifting practices as violations of the absolute priority rule in the context of a chapter 11 plan confirmation. That decision does not affect the court's analysis of the legal status of the proposed distribution priority in the current case, however, because the absolute priority rule has no application in a chapter 7 case.

[6] In In re Quezada, 368 B.R. 44 (Bankr. S.D. Fla. 2007), a case cited by the debtors, the court denied a trustee's request for authority to sell property subject to the homestead exemption to satisfy DSO obligations. However, in that case, the Florida homestead exemption covered the entire value of the property, and thus the property was fully excluded from the estate. The court noted that the trustee has no authority

7

Accordingly, the trustee's motion for authority to sell the Property free and clear of liens and for approval of a carve out is **ALLOWED.**

**SO ORDERED.**

**END OF DOCUMENT**

---

to sell property which is not property of the estate and based its ruling on that finding.